UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRENT DEAN and MICHAEL WILSON, | CASE NO. C10-277 MJP |
| Plaintiffs, | ORDER GRANTING SUMMARY JUDGMENT |
| v. | |
| AVIS BUDGET CAR RENTAL, LLC (D/B/A AVIS BUDGET GROUP, INC., | |
| Defendant. | |

This comes before the Court on Defendant's motion for summary judgment and motion to strike jury demand.  (Dkt. Nos. 48 and 50.)  Having reviewed the motions, Plaintiffs' responses (Dkt. No. 53 and 57), the replies (Dkt. No. 55 and 59), and all related filings, the Court GRANTS Defendant's motion for summary judgment and MOOTS the motion to strike Plaintiff's jury demand.

**Background**

Plaintiffs Brent Dean ("Dean") and Michael ("Wilson") are suing their former employer Avis Budget Car Rental, LLC ("Avis") for racial discrimination and retaliation in violation of the

1  Washington Law Against Discrimination. <u>See</u> RCW 49.60 et seq. (Am. Compl., Dkt. No. 20.)

2  Dean worked for Avis from 1996 until his termination in October 2009.  (Dkt. No. 51, Ex. 1 at

3  61:23-25 (Dean Dep.))  At the time of his termination, he was an Airport Manager at Seattle

4  International Airport ("SeaTac") and was responsible for supervising shift managers, shuttle

5  drivers, and service agents. (<u>Id.</u> at 4-7.)  Dean reported at various times to Avis's City Manager,

6  Josh Gonzalez ("Gonzalez"), who was responsible for all of Avis's operations in Washington,

7  and at other times to Avis's District Manager, John Butzke ("Butzke"), who was responsible for

8  all of Avis's SeaTac operations.  (<u>Id.</u>)

9        In January 2009, Butzke and Gonzalez issued Dean a letter of concern.  (Dkt. No. 51, Ex.

10  1 at pg. 59.)  After identifying various performance deficiencies, the letter stated "[t]hese

11  operational issues will no longer be tolerated and your continued employment is in jeopardy."

12  (<u>Id.</u>)  Butzke scheduled regular meetings with Dean over the next five months to review his

13  progress. (Dkt. No. 51, Ex. 1 at pg. 9-10 (Dean Dep.))  Dean concedes these employment actions

14  were not retaliatory. (<u>Id.</u> at pg. 14, 18-20.)  In July 2009, Butzke and Gonzalez determined Dean

15  no longer required regular meetings given performance improvements.  (<u>Id.</u> at 22.)

16        During this probationary period, Dean hired Wilson.  (Dkt. No. 51, Ex. 2 at pg. 5-6

17  (Wilson Dep.))  Wilson had been recently laid off by Avis as part of a reduction in workforce.

18  (<u>Id.</u>)  In March 2009, Dean re-hired Wilson for a part-time lead shuttle driver position at SeaTac.

19  (<u>Id.</u>)  Both Dean and Wilson are Caucasian.

20        In September 2009, Wilson submitted two complaints of racial discrimination that he

21  alleges were not properly investigated.  On September 14, 2009, Wilson got into an altercation

22  with another shuttle driver.  (Dkt. No. 51, Ex. 1 at pg. 26.)  Wilson alleged the shuttle driver

23  refused to move his car which was in his way.  Wilson complained that the shuttle driver said to

24

1   him in a threatening manner, "you are white and I don't respect you."  (Dkt. No. 58, Ex. 6.)

2   Wilson informed Dean of the incident, who then informed Butzke and Laurie Van Buskrirk

3   ("Van Buskirk"), the Human Resources Manager for the Northwest Region.  (Id.)  While Butzke

4   and Van Buskirk assigned Dean to obtain statements from witnesses, the parties dispute whether

5   Dean failed to perform the assigned task or whether Butzke and Van Buskirk failed to follow up

6   on the investigation. (Dkt. No. 58, Ex. 4; compare Ex. 1 at pg. 28 (Dean Dep.) with Ex. 5 at pg. 8

7   (Van Buskirk Dep.)

8          Wilson informed Dean of a second incident involving insubordination on September 22,

9   2009.  (Dkt. No. 58, Ex. 10.)  Wilson alleged several non-Caucasian shuttle drivers refused to

10  ride with him, suggesting that he was racist.  (Id.)  As with Wilson's first complaint, no

11  statements were taken from witnesses identified in Wilson's complaints. (Dkt. No. 8, Ex. 8 at 58

12  (Van Buskirk Dep.))  Van Buskirk  testified that, "based on the information we already had from

13  the investigation, from the grievance and from Mr. Wilson's investigation—Mr. Wilson's

14  meeting, that he was not a credible witness, and we did not feel the need to talk to any of his

15  witnesses." (Dkt. No. 51, Ex. 5 at pg. 9 (Van Buskirk Dep.))  On September 25, 2009, Wilson

16  was suspended without pay.  (Dkt. No. 58, Ex. 13.)  Wilson believed the suspension to be in

17  retaliation for Wilson filing his complaints. (Id.)  Dean objected to Wilson's suspension given his

18  pending complaints involving racial discrimination.  (Dkt. No. 58, Ex. 4 at pg. 32.)

19         Defendant contends Wilson was suspended based on separate complaints lodged against

20  him sometime before September 30, 2009.  Specifically, shortly before September 30, 2009, two

21  shuttle drivers approached Butzke complaining about Wilson.  (Dkt. No. 51, Ex. 3 at pg. 4-5

22  (Butzke Dep.))  Butzke informed the shuttle drivers to document their grievances and notified

23  Gonzalez.  (Id.; Dkt. No. 60, Ex. 3 at pg. 8.)  A written complaint on behalf of the shuttle drivers

24

ORDER GRANTING SUMMARY JUDGMENT- 3

1  and five others was filed on September 30, 2009, alleging Wilson's driving was unsafe, that

2  Wilson treated them unfairly and Wilson made inappropriate comments in the workplace related

3  to their race and/or national origin.  (Dkt. No. 51, Ex. 6 at pg. 17-20.)  The shuttle drivers also

4  alleged they reported Wilson's conduct to Dean several times and that Dean took no action.  (Id.)

5         Gonzalez and Van Buskirk assumed responsibility for investigating both Wilson's

6  complaints and the shuttle drivers' complaint.  (Dkt. No. 51, Ex. 5, at pg. 4 (Van Buskirk Dep.)

7  On October 14, 2009, Gonzalez notified Wilson that an investigation was initiated by letter.

8  (Dkt. No. 58, Ex. 2 at pg. 30.)  In following up on the shuttle drivers' complaint, Gonzalez and

9  Van Buskirk interviewed the complainants and determined Dean "was falling back into some

10 previous performance issues" and Wilson violated Avis's anti-harrassment, anti-discrimination

11 policy for inappropriate remarks he made to the shuttle drivers (Id. at 13; 10-11.)

12        Gonzalez and Van Buskirk reported the results of the investigation to Chris Rolletta

13 ("Rolletta"), the Human Resources Director for the West Region and John Sheperdson

14 ("Sheperdson"), the Regional Manager for the Northwest.  (Dkt. No. 51, Ex. 5 at pg. 15.)  As a

15 team, all four decided to terminate Dean and Wilson.  (Id.)  Avis hired Chris Easter to replace

16 Dean and Jeff Stone to replace Wilson.  (Id., Ex. 3 at pg. 12 (Butzke Dep.); Ex. 2 at pg. 19

17 (Wilson Dep.))  Like Dean and Wilson, both replacements are Caucasian.  (Id.).

18                                    **Discussion**

19 I.    <u>Motion for Summary Judgment</u>

20        Avis seeks summary judgment, arguing Plaintiffs were not terminated based on race or in

21 retaliation for Plaintiffs engaging in protected activity.  Avis argues (1) Dean was terminated for

22 failing to fulfill his duty as manager and inadequately responding to employee complaints and

23 (2) Wilson was terminated for violating company policies against discrimination and harassment.

24

1   Plaintiffs allege Defendant's arguments are pretextual and that Dean was really fired for

2   opposing Wilson's suspension and that Wilson was fired for submitting a complaint of racial

3   discrimination.

4       a.   Standard

5       Summary judgment is proper if the pleadings, depositions, answers to interrogatories,

6   admissions on file, and affidavits show that there are no genuine issues of material fact for trial

7   and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a).

8   Material facts are those "that might affect the outcome of the suit under the governing law."

9   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

10  The underlying facts are viewed in the light most favorable to the party opposing the motion.

11  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The party moving

12  for summary judgment has the burden to show initially the absence of a genuine issue

13  concerning any material fact.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970).  Once the

14  moving party has met its initial burden, the burden shifts to the nonmoving party to establish the

15  existence of an issue of fact regarding an element essential to that party's case, and on which that

16  party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24

17  (1986).

18      b.   Disparate Treatment

19      Plaintiffs allege Avis discriminated against them based on their race, color and/or

20  national origin in violation of Washington Law Against Discrimination ("WLAD"). (Am.

21  Compl. at 2-3.)  Washington, for the most part, adopts the burden-shifting approach articulated in

22  McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under Washington's approach, the

23  test for disparate treatment under the WLAD is similar to the federal test for disparate treatment

24

1   under Title VII.  Hill v. BCTI Income Fund-I, 144 Wash.2d 172, 180 (2001). First, the Plaintiff

2   must establish a prima facie case of discrimination, i.e., the plaintiff must show: (1) that he is a

3   member of a protected class; (2) that he was treated less favorably in the terms or conditions of

4   her employment than a similarly situated, non-protected employee, and (3) that he and the

5   nonprotected "comparator" were doing substantially the same work.  Johnson v. Dep't of Social

6   and Health Servs., 80 Wash.App. 212 (1996).

7        Once the Plaintiff has demonstrated that he can make out a prima facie case for disparate

8   treatment, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason

9   for the way the employee was treated.  Johnson v. Dep't of Soc. & Health Servs., 80 Wash.App.

10  212, 227 (1996). Then, the burden shifts back to the Plaintiff to show that the employer's

11  rationale for its actions is pretextual.  Id.  An employee can demonstrate pretext by submitting

12  evidence that a non-minority comparator committed infractions that were similarly serious, but

13  was not disciplined to the same degree as the minority employee. Id.  Although the final burden

14  of proof always rests with Plaintiff under this paradigm, the burden-shifting mechanism was

15  designed to allow Plaintiffs a fair chance at proving discrimination through indirect,

16  circumstantial evidence, as is often necessitated in discrimination cases.  Hill, 144 Wash.2d at

17  180.

18       To the extent Defendant believes a different standard applies for establishing a prima

19  facie case, Defendant relies on the standard for a racially motivated discharge in its motion.

20  Under that standard, the plaintiff must show (1) a member of a protected class, (2) was

21  discharged, (3) was doing satisfactory work, and (4) was replaced by someone not in the

22  protected class.  Grimwood v. University of Puget Soung, Inc., 110 Wn. 2d 355, 362-64 (1988);

23  Jones v. Kitsap County Sanitary Landfill, Inc., 60 Wash.App. 369, 371 (1991)(applying the

24

<u>Grimwood</u> test to racial discrimination claim).  Since it is not clear whether Plaintiff is alleging a WLAD violation based on racially motivated discharge or disparate treatment, the Court gives Plaintiff the benefit of the doubt as the non-moving party and uses the standard for disparate treatment to consider Defendant's motion for summary judgment.

      1.  <u>Dean</u>

Dean claims he was discriminated against because he is Caucasian.  In response to Defendant's motion, Dean argues there is a genuine issue of material fact as to whether his performance failed to meet expectations.  (Dkt. No. 58, Ex. 4 at pg. 13; Dkt. No. 60, Ex. 4 at pg. 25.)  Dean states he forwarded on all complaints about Wilson that he was aware of and counseled Wilson about his driving and cell phone usage.  (Dkt. No. 60, Ex. 4, at pg. 26, 36.)

The Court finds disagreement over the adequacy of his performance to be premature because Dean has not yet established a prima facie case of disparate treatment.  While his disagreement may be relevant for demonstrating pretext, Dean must first show he was treated less favorably than another non-protected comparator doing the same work.   Since Dean fails to show he was treated less favorably than a similarly-situated non-Caucasian employee, the Court finds he fails to establish a prima facie case of disparate treatment under WLAD.

To the extent Dean's allegations are based on racially motivated discharge and not disparate treatment, the claim still fails.  After he was terminated, Dean was replaced by Chris Easter, who was also Caucasian. (Dkt. No. 58, Ex. 3 at pg. 12 (Butzke Dep.))  Since he cannot demonstrate he was replaced by someone not in his protected class, summary judgment remains appropriate.  Whether he alleges disparate treatment or racially motivated discharge, Dean fails to establish a prima facie case of discrimination.  The Court GRANTS Defendant's motion for summary judgment regarding Dean's discrimination claim.

2.  <u>Wilson</u>

Wilson claims he was discriminated against because he is Caucasian.  While Wilson establishes a prima facie case of disparate treatment, Wilson ultimately fails to demonstrate Avis's reasons for terminating him was pretextual.

Wilson argues his September complaints of racial discrimination were not treated the same as the complaints by non-Caucasian employees against him. Specifically, Wilson complained that an African American employee made discriminatory remarks against him and no disciplinary action was taken, whereas he was terminated based on complaints by non-Caucasian employees.  Defendant concedes that Avis interviewed witnesses identified in non-Caucasian complaints against Wilson but statements from witnesses identified in Wilson's complaints were either not taken or not reviewed by Van Buskirk, Gonzalez, or Butzke.  (Dkt. No. 58, Ex. 8 at pg. 60 (Van Buskirk Dep.))  This is sufficient to establish a prima facie case of disparate treatment.

However, Defendant provides evidence that Wilson was fired based on his discriminatory comments and violations of Avis's anti-harassment policy.  With the burden shifted back to Wilson, there is no evidence that Defendant's offered reason for firing Wilson was pretextual. Wilson argues his complaints of discriminatory behavior were not taken as seriously as non-Caucasian employees' complaints against him.  But Avis investigated or attempted to investigate both of Wilson's complaints.  With respect to Wilson's September 14, 2009 complaint, Butske asked Dean to obtain statements from witnesses and, the next day, Van Buskirk opened an investigation regarding Wilson's allegations.  (Dkt. No. 61, Ex. C.)  Regardless of whether Dean or Van Buskirk completed the investigation, Wilson does not dispute an investigation was immediately initiated.  While the investigation was delayed by the fact that the person Wilson

ORDER GRANTING SUMMARY JUDGMENT- 8

1   accused of threatening him was on vacation the following week and could not be interviewed, no

2   reasonable jury could find disparate treatment.  (Id.)

3         With respect to Wilson's September 22, 2009 complaint, Van Buskirk testified that Avis

4   investigated both Wilson's complaint and the complaints against Wilson simultaneously because

5   they involved the same actors and arose at the same time. (Dkt. No. 51, Ex. 5, at pg. 4; see also

6   Ex. 4 at pg. 4 (Rolletta Dep.))   While Wilson criticizes Van Buskirk's decision not to interview

7   witnesses Wilson identified in his complaint, she did so after meeting with Wilson and finding

8   his allegations not to be credible. (Id.)   Considering the facts in a light most favorable to Wilson,

9   the Court finds Wilson's claim of disparate treatment to in fact be a disagreement with the

10  outcome of Avis's investigation.

11        Wilson also argues factual disputes preclude summary judgment.  The Court disagrees.

12  First, despite Wilson's arguments, it is clear Wilson was suspended after shuttle drivers notified

13  Avis of their complaint.  Both Butzke and Gonzalez testify that shuttle drivers told Butzke of

14  their complaints before filing their September 30, 2009 written grievance.  Second, contrary to

15  Wilson's argument, the parties do not dispute that Wilson's witnesses were not interviewed and

16  that the people he accused of discriminatory actions were not disciplined.  Based on an interview

17  with Wilson, Defendant submits Wilson's complaints were not considered credible.  Third,

18  Wilson's belief that he met work expectations is irrelevant.  Defendant terminated him for his

19  discriminatory conduct, not his failure to meet expectations.  Finally, Wilson's argument that he

20  never discriminated against other employees is a defense to his own firing, but does not establish

21  a claim for disparate treatment.

22        To the extent Wilson alleges racially motivated discharge, Wilson's claim fails.  After he

23  was terminated, Wilson was replaced by Jeff Stone, who was also Caucasian. (Dkt. No. 60, Ex. 1

24

ORDER GRANTING SUMMARY JUDGMENT- 9

at pg. 6 (Wilson Dep.))  Since he cannot demonstrate he was replaced by someone not in his

protected class, summary judgment is likewise appropriate.

The Court GRANTS Defendant's motion for summary judgment.

c.   Retaliation (RCW 49.60.210)

Under WLAD, "[i]t is an unfair practice for any employer . . . to discharge . . . or

otherwise discriminate against any person because he or she has opposed any practices forbidden

by this chapter."  RCW 49.60.210(1).  To establish a prima facie case of retaliation, plaintiffs

must show that: (1) they were engaged in statutorily protected activities, (2) an adverse

employment action was taken, and (3) there was a causal connection between the exercise of the

legal right and the discharge.  Wilmot v. Kaiser Aluminum & Chem. Corp., 118 Wn. 2d 46, 68-

69 (1991).  The third requirement is satisfied by showing the plaintiff filed a claim, the employer

had knowledge of the claim, and the plaintiff was discharged.  Id. at 69.

Once a prima facie case is established, the burden shifts to the employer to show a

legitimate non-retaliatory reason for the discharge.  Id. at 70.  If the employer produces such

evidence, the burden shifts back to the plaintiff to show that the employer's reason is pretextual,

i.e., that retaliation was a substantial factor motivating the discharge.  Allison v. Housing

Authority of City of Seattle, 118 Wash. 2d 79, 85 (1991)(defining the "substantial factor" test for

causation).

1.   Dean

Dean argues he was retaliated against for either forwarding Wilson's initial complaints to

his superiors or for opposing Wilson's suspension.  (Compare Pltf's Resp. Br. at 9 with Am.

Compl. at 3.)  The Court disagrees.

ORDER GRANTING SUMMARY JUDGMENT- 10

First, Dean's forwarding of Wilson's initial complaints was not statutorily protected activity because he was not opposing any of Avis's practices.  At most, Dean's referral of complaints to Butzke and Van Buskirk suggests he was aware employees were potentially violating Avis's policies regarding anti-discrimination and harassment.  Dean's action falls short of "oppos[ing] any practices forbidden by [the WLAD]" and therefore insufficient to establish a prima facie case of retaliation.  RCW 49.60.210(1).

Second, Dean fails to demonstrate any evidence that his opposition to Wilson's complaints was a substantial factor in his termination.  While Dean's opposition to Wilson's suspension arguably establishes a prima facie case of retaliation, Dean fails to meet the subsequent burden of demonstrating pretext.  Whether or not Dean agrees that he was failing to meet expectations, it is undisputed Avis considered terminating Dean for poor performance even before he voiced opposition to Wilson's suspension. (Dkt. No. 51, Ex. 1 at pg. 59; see also Dkt. No. 60, Ex. A. (an email Gonzalez sent to a colleague stating Dean "has fallen back into his old ways. . . . I believe it is time we either look to separate or put Brent on a one time last and final 30 days notice").  Dean's termination one month after opposing Wilson's suspension was enough to establish a prima facie case of retaliation, but Dean ultimately fails to introduce any evidence that a reasonable finder of fact could decide his opposition to Wilson's suspension was a substantial factor in his termination.  Avis eventually terminated Dean because he did not fulfill his managerial duties when he inadequately addressed complaints by shuttle drivers.

The Court GRANTS summary judgment with respect to Dean's retaliation claim.

2.  Wilson

Wilson argues he was retaliated against based on his two September 2009 complaints of racial discrimination.  The Court disagrees.

1   Wilson establishes a prima facie case of retaliation, but likewise fails to demonstrate his

2   complaints were a substantial factor in his termination.  Avis terminated Wilson based on its

3   investigation of several shuttle drivers' complaints that he was disrespectful, made inappropriate

4   racial comments, and failed to follow Avis policy.  While Wilson argues the stated reason for his

5   termination is pretextual, his arguments are unpersuasive.  Wilson argues the timing of his

6   termination ten days after filing his complaints suggests retaliation.  As discussed above, timing

7   only establishes the first step for a prima facie case of retaliation.  Timing alone is not evidence

8   of pretext.

9   With respect to Avis's inadequate investigation of his complaints shows retaliation,

10  Wilson's argument is still unavailing.  Avis's decision not to interview witnesses or more fully

11  consider Wilson's complaint does not suggest Avis fired Wilson based on his protected activity.

12  To the extent that inadequate investigations may be correlated with retaliatory actions, Wilson

13  produces no other evidence of retaliation; therefore, no reasonable fact finder could conclude in

14  his favor.

15  The Court GRANTS summary judgment with respect to Wilson's retaliation claim.

16  II.    Motion to Strike Wilson's Jury Demand

17  Defendant seeks to strike Wilson's jury demand given that his employment contract

18  waived his right to a jury trial.  Because the Court finds none of Wilson's claims survive

19  summary judgment, the motion is MOOT.

20  **Conclusion**

21  The Court GRANTS Defendant's motion for summary judgment because Plaintiffs and

22  Wilson fail to demonstrate disparate treatment or retaliation.  Since all claims are dismissed with

23

24

ORDER GRANTING SUMMARY JUDGMENT- 12

1 prejudice, Defendant's motion to strike Wilson's jury demand is MOOT.  The clerk is ordered to

2 provide copies of this order to all counsel.

3        Dated this 10th day of May, 2011.

4

5

6

Marsha J. Pechman
7 United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER GRANTING SUMMARY JUDGMENT- 13